1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Carol Rall,                          )
                                          )
10              Plaintiff,                )    No.  CIV 04-2336-PHX-DKD
                                          )
11   vs.                                  )
                                          )    **ORDER**
12   Arizona Department of Public Safety, )
                                          )
13              Defendant.                )
     _____ )

14

15          Pending before the Court is Defendant Arizona Department of Public Safety's ("DPS")

16   Motion for Summary Judgment (Doc. #35).  For the reasons stated below, the Court finds that

17   there is no genuine issue of material fact regarding Plaintiff Carol Rall's Equal Pay Act ("EPA")

18   and Title VII claims and DPS is therefore entitled to judgment as a matter of law.  The parties

19   have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. #4).

20                              **BACKGROUND**

21          Rall began her employment with DPS in 1989 (DSOF ¶ 7).  After receiving a number

22   of promotions at DPS, Rall received a promotion to become the acting manager of DPS's

23   Logistics Bureau in November 2000 (DSOF ¶ 17).  DPS's Logistics Bureau is one of four

24   bureaus that make up DPS's Support Division (Doc. #35 at 2).  The Logistics Bureau is

25   responsible for the procurement, maintenance, and replacement of supplies for DPS's vehicle

26   fleet (DSOF ¶ 19).  In 2001, Rall received a salary reclassification upgrade and was classified

27   as an Administrative Manager (DSOF ¶ 20).  DPS employee salaries are based on an

28   employee's job classification (DSOF ¶ 1).  Both men and women have had the Administrative

1   Manager classification and held the position of Logistics Manager (DSOF ¶ 77-78). At the time

2   of her reclassification as an Administrative Manager, Rall's yearly salary was $68,493 (DSOF

3   ¶ 20). Rall retired from DPS in May 2004 and her final yearly salary was $69,943 (DSOF ¶ 22).

4           As the manager of DPS's Logistics Bureau, Rall was required to manage the logistics

5   of maintaining DPS's vehicle fleet (PSOF ¶ 100). Rall supervised 41 employees and had an

6   annual budget of $5,328,146 (PSOF ¶ 99). Rall did not negotiate contracts for DPS and her

7   position did not require technical knowledge (DSOF ¶ 37, PSOF ¶ 100). Rall, moreover, was

8   a civilian employee and was not a sworn peace officer (DSOF ¶ 29).

9           Rall's predecessor was Robert Aguilera ("Aguilera"), who was classified as a

10  Commander under the DPS pay system, and he received a yearly salary of $89,958 (PSOF ¶ 91).

11  Pursuant to the pay system, Aguilera's salary was based on his Commander classification (Doc.

12  #35 at 4). As a Commander, Aguilera was a sworn peace officer, and was required to undergo

13  law enforcement training and was available to respond to law enforcement duties at any time

14  (*Id.* at 5). In addition, Aguilera was assigned to Logistics after serving as DPS deputy director

15  – the number two position in the agency – under a previous director (DSOF ¶ 73). Aguilera

16  served as head of Logistics for several months before retiring (DSOF ¶ 74). Rall's successor,

17  Mike Fuson ("Fuson"), a male, received a yearly salary of $73,000 (PSOF ¶ 98). Roger

18  Illingsworth ("Illingsworth"), a male, served as a Grants Manager at DPS and, like Rall, was

19  classified as an Administrative Manager (DSOF ¶ 80, PSOF ¶ 99). Illingsworth received the

20  same salary as Rall (DSOF ¶ 80). Illingsworth supervised 3 employees and had an annual

21  budget of $35,400 (PSOF ¶ 99).

22          Carl Tornambe ("Tornambe"), a male, served as the manager of DPS's Facilities Bureau

23  and was classified as Facilities Manager (DSOF ¶ 41). Tornambe was responsible for

24  overseeing the design, funding, construction, and improvements of DPS buildings (DSOF ¶ 41-

25  46). Tornambe was responsible for negotiating contracts and traveled often around Arizona to

26  manage DPS facilities (DSOF ¶ 42, 45). Further, Tornambe's position required technical

27

28                                          - 2 -

1    knowledge of the mechanical, electrical, and plumbing components of DPS facilities (DSOF
2    ¶ 47).  In 2002, Tornambe's yearly salary was $90,199 (DSOF ¶ 51).

3          Phillip Case ("Case"), a male, served as Comptroller of DPS and its chief financial
4    officer (DSOF ¶ 53).  Case was responsible for the oversight of the financial accounting
5    structure of DPS and monitored its expenditures (DSOF ¶ 56).  DPS has an annual appropriated
6    budget of $183.6 million and expends $50 million in non-appropriated funds.  (*Id.*)  Case also
7    served as the liaison between the Legislature and the Governor's budget office (DSOF ¶ 57).
8    In 2001, Case's yearly salary was $87,839 and increased to $89,289 in 2002 (DSOF ¶ 59).

9          Sam Fragala ("Fragala"), a male, is a sworn peace officer and classified as a Commander
10   by the DPS classification system (DSOF ¶ 60).  Fragala served as DPS Human Resources
11   Commander (DSOF ¶ 61).  Fragala is responsible for the recruitment of law enforcement
12   officers and the administration of the promotions process for sworn peace officers (DSOF ¶ 62-
13   63).  Fragala carries a weapon, is available to respond to emergencies, and is required to
14   perform annual law enforcement training to retain his peace officer certification (DSOF ¶ 64-
15   65).  Fragala received a yearly salary of $90,408 from 2002 to 2004 (DSOF ¶ 66).

16         Gary Hughes ("Hughes"), a male, is a sworn peace officer and classified as a Commander
17   by the DPS classification system (DSOF ¶ 67-68).  Hughes is required to respond to
18   emergencies at all times and is required to perform annual law enforcement training to retain
19   his peace officer certification (DSOF ¶ 69-70).  As a Commander, Hughes was responsible for
20   training sworn peace officers, and he oversaw the enforcement and accident records section and
21   the safety and loss section (DSOF ¶ 72).

22                                  **SUMMARY JUDGMENT**

23         For DPS to prevail on its Motion for Summary Judgment, it must show, through the
24   pleadings and supporting documents, that there is no genuine issue of material fact and that it
25   is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,*
26   477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Substantive
27   law determines which facts are material, and "[o]nly disputes over facts that might affect the

28

1   outcome of the suit under the governing law will preclude the entry of summary judgment."

2   *Anderson*, 477 U.S. at 248.  For a genuine issue of material fact to exist, there must be evidence

3   that would allow a reasonable jury to return a verdict for the nonmoving party."  *Id.*  Further,

4   the court must draw all reasonable inferences in favor of the non-moving party.  *Id.* at 255.

5       The party opposing summary judgment "may not rest upon the mere allegations or

6   denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a

7   genuine issue for trial."  Fed.R.Civ.P. 56(e);  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

8   *Corp.*, 475 U.S. 574, 586-87 (1986).  There is no issue for trial unless there is sufficient

9   evidence favoring the non-moving party; if the evidence is merely colorable or is not

10  significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

11  Finally, unsupported testimony is insufficient to defeat a motion for summary judgment.

12  *Anheuser-Busch v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995).

**DISCUSSION**

13

14  **I.    Plaintiff's EPA Claim**

15          **A.    EPA legal standard**

16      The EPA prohibits employers from paying employees "at a rate less than the rate at

17  which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs

18  the performance of which requires equal skill, effort, and responsibility, and which are

19  performed under similar working conditions . . ."  29 U.S.C. § 206(d)(1).  For purposes of

20  comparison, "the jobs need not be identical, but they must be 'substantially equal.'"  *Stanley v.*

21  *Univ. of S. Cal.*, 13 F.3d 1313, 1321 (9th Cir. 1994).  Furthermore, "[e]ach of these components

22  [skill, effort, and responsibility] must be substantially equal to state a claim."  *Id*.

23      The Ninth Circuit has outlined a burden-shifting framework in EPA cases.  Initially, "the

24  plaintiff has the burden of establishing a *prima facie* case of discrimination by showing that

25  employees of the opposite sex were paid different wages for equal work."  *Stanley v. Univ. of*

26  *S. Cal.*, 178 F.3d 1069, 1073-74 (9th Cir. 1999).  At this stage, "[t]he prima facie case is limited

27

28                                          - 4 -

1  to a comparison of the jobs in question, and does not involve a comparison of the individuals

2  who hold the jobs." *Id.* at 1074.

3        The plaintiff bears the burden of showing that her job was "substantially equal" to a job

4  with a higher pay rate.  A plaintiff may do this by showing "the jobs to be compared have a

5  'common core' of tasks, i.e., [that] a significant portion of the two jobs is identical." *Stanley*,

6  178 F.3d at 1074.  The court does not compare the individuals who hold the positions. *Id.*  Once

7  the plaintiff establishes this "common core of tasks," the inquiry shifts and "the court must then

8  determine whether any additional tasks, incumbent on one job but not the other, make the two

9  jobs 'substantially different.'"  *Id.*  *See also Fallon v. State of Illinois*, 882 F.2d 1206, 1209 (7th

10  Cir. 1989) (outlining "common core" approach).

11        Once the plaintiff establishes a *prima facie* case, "the burden of persuasion shifts to the

12  employer to show that the [pay] disparity is permitted by one of the four statutory exceptions

13  to the Equal Pay Act." *EEOC v. Maricopa County Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th

14  Cir. 1984).  The fourth statutory exception, the one at issue in this case, is "differential [in pay]

15  based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *Maricopa County*, 736 F.2d

16  at 513.  A salary difference based on a classification system qualifies as a factor other than sex

17  if the system is neutrally applied to both male and female employees. *Maricopa County Cmty.*

18  *Coll. Dist.*, 736 F.2d at 514-15; *see Maxwell v. City of Tucson,* 803 F.2d 444, 447 (9th Cir.1986).

19        If the defendant meets the burden of showing that the pay disparity is based on a

20  statutory exception, "the employee may prevail by showing that the employer's proffered

21  nondiscriminatory reason is a 'pretext for discrimination.'" *Stanley*, 178 F.3d at 1076 (quoting

22  *Maxwell*, 803 F.2d at 446).  At this stage, the plaintiff "bears the burden of demonstrating a

23  material fact regarding pretext in order to survive summary judgment." *Stanley,* 178 F.3d at

24  1076 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

25        **B.**    **EPA Analysis**

26        Rall has failed to show that her position as the manager of the Logistics Bureau was

27  substantially equal to that of her male counterparts, in particular the bureau chief Tornambe, to

28

whose position she draws the critical comparison[1].  Although Rall has shown that she had

significant managerial responsibilities that were similar to her male counterparts that managed

DPS Bureaus, her position required materially different responsibilities and it was not

substantially equal to the positions of her male counterparts.  *See Stanley,* 178 F.3d at 1074.

Tornambe was responsible for the funding, design, improvement, and construction of

DPS facilities throughout Arizona (DSOF ¶ 43, 46).  His position required him to have technical

knowledge of mechanical, electric, and plumbing components of DPS facilities and he was

responsible for negotiating contracts for DPS (DSOF ¶ 47).  Tornambe, moreover, was required

to travel extensively throughout Arizona to carry out his position (DSOF ¶ 42).  As Logistics

Manager, Rall was not required to perform the same material responsibilities listed above that

Tornambe was required to perform as Facilities Manager.  Defendant submitted unchallenged

evidence[2] that Tornambe's pay differential was substantially due to his request that his position's

compensation be reevaluated in light of his demonstration that facilities managers for other

public entity employers received higher pay (DSOF ¶ 51).  Plaintiff argues that her budget of

$5,328,146 dwarfs Tornambe's budget of $2,777,666 and therefore demonstrates the

equivalency of the two positions (PSOF ¶ 86).  This argument does not reflect the unchallenged

fact that Tornambe's budget did not include millions of dollars in capital improvement and

building improvement funds for which his position exercised oversight responsibility (DSOF

¶ 43).  Nor does it recognize the unchallenged fact that much of the Logistics budget includes

categories which are relatively fixed by external factors such as $1.8 million for fuel

(Schallmann Affidavit, attached as Exhibit 2 to DSOF).

---

[1]"In the instant case Plaintiff is comparing herself against Carl Tornambe."  (Plaintiff's Response to Defendant's Motion for Summary Judgment, at p. 7).

[2]Plaintiff objected to Defendant's affidavits which were not sworn before a notary public. This objection is without merit as affidavits executed under penalty of perjury are permissible Rule 56 affidavits.  28 U.S.C. § 1746; *U.S. v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003).

1        The equivalency analysis fails with respect to other possible employees as well.  Rall's

2   position did not contain the same material responsibilities as Case's position as Comptroller and

3   the positions were not substantially equal.  Case served as the chief financial officer and was

4   responsible for overseeing DPS's accounting structure and expenditures (DSOF ¶ 56).  Rall's

5   position only required her to manage the finances of a DPS Bureau, not an entire state agency.

6   Case was also required to serve as a liaison between the Governor's budget office and the

7   Arizona Legislature (DSOF ¶ 57).

8        Rall's position as a Logistics Manager is also materially different from the positions of

9   Fragala and Hughes.  Fragala and Hughes were sworn peace officers (DSOF ¶ 60, 67).  They

10  both carry firearms, are required to undergo law enforcement training to retain their peace

11  officer certification, and are required to respond to emergencies (DSOF ¶ 64-65, 69, 70).

12  Moreover, Fragala's positions at DPS required him to manage the recruitment and promotions

13  of peace officers (DSOF ¶ 62-63).  Hughes' position required him to supervise the training of

14  peace officers and management of departments regarding law enforcement procedure (DSOF

15  ¶ 72).  Rall was a civilian employee and she was not required to take on the responsibilities of

16  a sworn peace officer in her position as Logistics Manager.  Furthermore, as Logistics Manager,

17  Rall did not manage the recruitment, promotions or training of peace officers, nor did she

18  manage law enforcement procedures.

19       Aguilera held the same Logistics Manager position as Rall (PSOF ¶ 91).  However,

20  Aguilera, like Fragala and Hughes and unlike Rall, was a sworn peace officer, required to

21  undergo law enforcement training, and was available to respond to law enforcement duties at

22  any time (DSOF ¶ 29, 30, 64, 65, 69).  Rall's position as Logistics Manager is not substantially

23  equal to Aguilera's position because Aguilera was paid at the Commander level which reflected

24  the extra responsibilities of a sworn peace officer.  Moreover, Aguilera's unique circumstances

25  as a former deputy director refute an inference of discriminatory pay in violation of the EPA.

26

27

28

1     Because Rall has failed to meet the burden of showing that her position with DPS was

2     substantially equal to that of her male counterparts, in particular Tornambe, the Court grants the

3     Defendant's Motion for Summary Judgment regarding Rall's EPA claim.

4     **II.     Plaintiff's Title VII Claim**

5          **A.     Title VII Legal Standard**

6          Under Title VII, a plaintiff must establish a *prima facie* case of unlawful discrimination.

7     *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1126 (9th Cir. 2001).  Title VII places a

8     broader prohibition on discriminatory wages than the EPA and, unlike the EPA, permits a

9     plaintiff to pursue a claim without showing substantial equality of jobs with different pay rates.

10    *County of Washington v. Gunther*, 452 U.S. 161, 169-71, 179-80 (1981);  *Lewis v. Smith*, 255

11    F.Supp.2d 1054, 1060-61 (2003).

12         To establish a *prima facie* case, a plaintiff must present direct or circumstantial evidence

13    of intentional discrimination by an employer.  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217,

14    1220 (9th Cir. 1998).  A plaintiff may circumstantially establish a *prima facie* case by meeting

15    the following four requirements:   the plaintiff (1) is a member of a protected class, (2)

16    performed according to the employer's legitimate expectations, (3) suffered an adverse

17    employment action, and (4) was treated less favorably than other employees similarly situated.

18    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

19         The defendant can rebut the plaintiff's *prima facie* case by showing that the pay disparity

20    is permitted by one of the statutory exceptions to an EPA claim.  *Lewis*, 255 F.Supp.2d at 1062.

21    Title VII incorporates the EPA's statutory exceptions and a defendant that proves one of the

22    statutory exceptions "cannot be held liable under the EPA or Title VII."  *Maxwell v. City of*

23    *Tucson*, 803 F.2d 444, 446 (9th Cir.1986); 42 U.S.C. § 2000e-2(h).  *See Gunther*, 452 U.S. at

24    168 (holding that Title VII incorporates EPA's statutory exceptions).

25         If the defendant rebuts the plaintiff's *prima facie* case by showing a permissible reason

26    for a pay disparity, the plaintiff has the burden to show that the employer's stated reason is a

27    pretext for discrimination.  *Lewis*, 255 F.Supp.2d at 1060 (citing *Godwin*, 150 F.3d at 1220).

28

1    If the plaintiff offered direct evidence of discriminatory motive, "a triable issue as to the actual

2    motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d

3    at 1221.  However, if the plaintiff relies on indirect evidence to show that the defendant's stated

4    motive is a pretext, the plaintiff must present "'specific' and 'substantial' [evidence] in order

5    to create a triable issue to whether the employer intended to discriminate on the basis of sex."

6    *Id.* at 1222.

7         **B.    Title VII Analysis**

8         Rall has not presented evidence that establishes a *prima facie* case.  She does not show

9    that she was treated less favorably than other employees similarly situated.  Although the

10   motion for summary judgement, the response and the reply discuss a number of different

11   employees, as indeed does this Order, Plaintiff very plainly limited the relevant comparative

12   employees to Tornambe.  The Response states, "[i]n the instant case Plaintiff is comparing

13   herself against Carl Tornambe" (Plaintiff's Response, Doc. #42 at p. 7).  The same point is made

14   in her statement of facts:

15         87.    All of the individuals who were Bureau Chiefs were male.  All of the
           individuals had a greater salary than Plaintiff.  In this lawsuit Plaintiff compares
16         herself against Carl Tornambe, Bureau Chief Facilities Manager (See Rall
           Affidavit, ¶1; Exhibit "B").
17

18   (PSOF ¶87).  Thus the appropriate focus, as framed by Plaintiff, is upon Tornambe.  As set forth

19   in the preceding section, Tornambe does not qualify as a similarly situated employee.  There is

20   no genuine issue of material fact that Tornambe was paid more because his job was materially

21   different, not because of impermissible gender discrimination.

22         Even assuming Plaintiff could demonstrate a *prima facie* Title VII case, Defendant would

23   still be entitled to judgment as a matter of law.  As discussed in Section I. B., the Defendant has

24   initially shown that its salary disparity between employees is based on the factor other than sex

25   statutory exception.  Because DPS has initially proved one of the statutory exceptions under the

26   EPA, it can not be held liable under Title VII unless Rall can show DPS's stated reason for its

27

28

salary disparity is a pretext for sexual discrimination.  *Maxwell*, 803 F.2d at 446; *Godwin*, 150 F.3d at 1220.

The Plaintiff has not presented direct proof of intentional discrimination by DPS.  Rall has attempted to present indirect evidence that DPS's stated reason for its pay disparity is a pretext for sexual discrimination.  Because Rall has presented indirect evidence, she must present "substantial" and "specific" evidence that DPS's pay system is a pretext for sexual discrimination.  *Godwin*, 150 F.3d at 1222.  Drawing all inferences in favor of the Plaintiff, the Court finds that the Plaintiff has not presented "substantial" and "specific" evidence that shows the Defendant's stated reasons for a pay disparity were a pretext for sexual discrimination.

The Court will grant the Defendant's Motion for Summary Judgment regarding the Plaintiff's Title VII claim.

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary Judgment regarding Rall's EPA claim (Doc. #35).

**IT IS FURTHER ORDERED** granting Defendant's Motion for Summary Judgment regarding Rall's Title VII claim (Doc. #35).

The Clerk shall enter Judgment in favor of Defendant and dismiss the case.

DATED this 29th day of September, 2006.

_____
David K. Duncan
United States Magistrate Judge

- 10 -